UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHILLIP FUREY,

         Plaintiff,

    v.

THOMSON REUTERS AMERICA
CORPORATION, et al.,

        Defendants.

Case No.  15-cv-04633-KAW

ORDER DENYING WITHOUT
PREJUDICE DEFENDANTS' MOTION TO
TRANSFER VENUE; ORDER
CONTINUING 3/22/16 CASE
MANAGEMENT CONFERENCE

Re: Dkt. No. 13

On October 6, 2015, Plaintiff Phillip Furey filed a putative class action against Defendants Thomson Reuters America Corporation and Reuters America LLC alleging wage and hour violations. (Compl., Dkt. No. 1.)  On December 7, 2015, Defendants filed a motion to transfer venue to the U.S. District Court for the Central District of California. (Defs.' Mot., Dkt. No. 13.)

On January 21, 2016, the Court held a hearing, and after careful consideration of the parties' arguments, for the reasons set forth below, the Court DENIES WITHOUT PREJUDICE Defendants' motion to transfer venue.

## I.    BACKGROUND

Named Plaintiff Phillip Furey is a resident of California. (Compl. ¶ 7.)  Defendant Thomson Reuters America Corporation is a Delaware corporation that maintains offices and conducts business in California. (Compl. ¶ 8.)  Defendant Reuters America LLC is a Delaware limited liability company that maintains offices and conduct business operations in California. *Id.* Defendants operate a news service organization throughout the United States, which employs Journalists throughout the country, including California. *Id.*

Plaintiff Phillip Furey worked as a journalist for Defendants for the last 10 years. (Compl. ¶ 7.)  Plaintiff alleges that Defendants misclassified him and other similarly situated journalists as

1    independent contractors, and seeks damages, including unpaid wages, overtime compensation,

2    employee benefits, and injunctive relief available under California law. (Compl. ¶¶ 2-3.)

3         On October 6, 2015, Plaintiff filed the initial complaint.  On December 7, 2015,

4    Defendants filed their Motion to Transfer this action to the Central District of California. (Defs.'

5    Mot., Dkt. No. 13.) On December 21, 2015, Plaintiff filed an opposition. (Pl.'s Opp'n, Dkt. No.

6    18.)  On December 28, 2015, Defendants filed a reply. (Defs.' Reply, Dkt. No. 21.)

7                          **II.    LEGAL STANDARD**

8         **A.    Motion to Transfer**

9         Pursuant to 28 U.S.C. § 404(a), a court may transfer a civil action to any other district in

10   which the action could have been brought, "[f]or the convenience of parties and witnesses, in the

11   interest of justice . . . ."  Courts engage in a two-step process when determining whether to transfer

12   an action.  First, the trial court must determine whether the case could properly have been brought

13   in the transferee district in the first instance. *Shabani v. Volkswagen Grp. of Am.*, 2012 WL

14   4675047, at *2 (N.D. Cal. Oct. 2, 2012).  Once the trial court determines the propriety of the

15   proposed transferee forum, that court must evaluate numerous factors relating to convenience and

16   the interests of justice. *Id.* The Ninth Circuit has identified a non-exhaustive list of factors for

17   courts to weigh:

18         (1) the location where the relevant agreements were negotiated and
           executed, (2) the state that is most familiar with the governing law,
19         (3) the plaintiff's choice of forum, (4) the respective parties' contacts
           with the forum, (5) the contacts relating to the plaintiff's cause of
20         action in the chosen forum, (6) the differences in the costs of
           litigation in the two forums, (7) the availability of compulsory
21         process to compel attendance of unwilling non-party witnesses, and
           (8) the ease of access to sources of proof.

22   *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).

23         The trial court has broad discretion when evaluating these factors, in light of the particular

24   circumstances of each case. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Bibo v.*

25   *Fed. Express, Inc.*, 2007 WL 2972948, at * 2 (N.D. Cal. Oct. 10, 2007).  "No single factor is

26   dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-

27   by-case basis." *Ctr. for Biological Diversity v. Kempthorne*, No. 08-1339, 2008 WL 4543043, at

28   *2 (N.D. Cal. Oct. 10, 2008) (citing *Stewart Org., Inc.*, 487 U.S. at 29; *Sparling v. Hoffman*

2

1  *Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988)).

2      Generally, the defendant must make a strong showing that transfer is appropriate to

3  warrant upsetting the plaintiff's choice of forum. *Decker Coal Co. v. Commonwealth Edison Co.*,

4  805 F.2d 834, 843 (9th Cir. 1986) (internal citations omitted); see *also Ctr. for Biological*

5  *Diversity & Pac. Env't*, 2007 WL 2023515 at *3 (unless the balance of factors weighs heavily in

6  favor of the defendants, "the plaintiff's choice of forum should rarely be disturbed") (internal

7  citations omitted).  Thus, "a plaintiff's choice of forum is entitled to greater deference when the

8  plaintiff has chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct.

9  252, 70 L.Ed.2d 419 (1981).  Notwithstanding, "[i]f the operative facts have not occurred within

10 the forum of original selection and that forum has no particular interest in the parties or the subject

11 matter, the plaintiff's choice is entitled only to minimal consideration." *Id.* (internal quotation

12 marks and citation omitted).  "The degree to which courts defer to the plaintiff's venue choice is

13 substantially reduced where the plaintiff's venue choice is not its residence or where the forum

14 lacks a significant connection to the activities alleged in the complaint." *Id.* (internal quotation

15 marks and citation omitted).  Moreover, while a plaintiff's choice of forum is usually given great

16 weight, "when an individual brings a derivative suit or represents a class, the named plaintiff's

17 choice of forum is given less weight." *Johansson v. Cent. Garden & Pet Co.*, 2010 WL 4977725,

18 at * 2 (N.D. Cal. Dec. 2, 2010) (quoting *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)).

19     **B.      Request for Judicial Notice**

20      A district court may take notice of facts not subject to reasonable dispute that are "capable

21 of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

22 questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir.

23 1993).  "[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689

24 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider

25 "documents whose contents are alleged in a complaint and whose authenticity no party questions,

26 but which are not physically attached to the pleading" without converting a motion to dismiss

27 under Rule 12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454

28 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119

United States District Court
Northern District of California

1  (9th Cir. 2002).  The court need not accept as true allegations that contradict facts which may be

2  judicially noticed.  *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir.

3  1987).

4  ### III.    DISCUSSION

5  #### A.    Request for Judicial Notice

6       As a preliminary matter, Plaintiff asks that the Court take judicial notice of a number of

7  documents in support of his opposition. (Req. for Judicial Notice, "RJN", Dkt. No. 18-3.)  The

8  documents are purportedly true and correct copies of: 1) Article from the Reuters website, dated

9  October 22, 2010, entitled "How does Reuters gather news?"; 2) LinkedIn profile of Jonathan

10  Weber, who purportedly served as the West Coast Bureau Chief for Reuters News in San

11  Francisco, California from September 2011 through February 2014; 3) Article from Talking Biz

12  News website, regarding the vacant position of Reuters West Coast Bureau Chief, and how to

13  apply, dated February 14, 2014; 4) Expired job posting for the West Coast Bureau Chief position

14  from Climber.com; and 5) LinkedIn profile of Dina Kryiakidou, who has purportedly served as the

15  West Coast Bureau Chief for Reuters News in San Francisco, California since January 2015.

16       A district court may take notice of facts not subject to reasonable dispute that are "capable

17  of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

18  questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir.

19  1993).  Defendants object to all of the exhibits that are the subject of Plaintiff's request for judicial

20  notice.  (Defs.'Obj., Dkt. No. 21-4.)  Specifically, Defendants object to Exhibit 1 on the grounds

21  that the article, and the facts contained therein, are not generally known and are not capable of

22  accurate and ready determination from a source whose accuracy cannot reasonably be questioned.

23  (Defs.' Obj. at 1.)  The Court agrees, and will not take judicial notice of Exhibit 1.

24       Defendants object to Exhibits 2 and 5 on the grounds that the LinkedIn profiles of the

25  former and current West Coast Bureau Chiefs contain facts that are not generally known and are

26  not capable of accurate and ready determination from a source whose accuracy cannot reasonably

27  be questioned. (Defs.' Obj. at 2.)  Again, the Court agrees.

28       Defendants object to Exhibits 3 and 4 on the grounds that the online job postings are from

4

third party websites with no affiliation with Defendants and so are not capable of accurate and ready determination from a source whose accuracy cannot reasonably be questioned. (Defs.' Obj. at 3.)  The Court agrees.

Accordingly, the Court DENIES Plaintiff's request for judicial notice.

**B.   Motion to Transfer**

Defendants move the Court to transfer venue to the Central District, arguing that this action could have been brought there in the first instance, and that the relevant factors relating to convenience and the interests of justice favor transfer. (Defs.' Mot. at 6-7.)

**i.   Propriety of venue in the Central District**

Defendants contend that this action might have been properly brought in the Central District. (Defs.' Mot. at 6-7.)  Defendants operate a news bureau in Los Angeles County, where Plaintiff worked. *Id.* at 7.  Plaintiff does not dispute that this action could have been filed in the Central District.  Accordingly, the Court finds that venue would be proper in the Central District.

**ii.   Weighing Factors**

Once the party seeking transfer has made a showing that the case could have been originally filed in the transferee district, the court has discretion to consider a change of venue based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).  Thus, the Court considers the factors below.

a.   Plaintiff's Choice of Forum

Although a defendant must generally make a strong showing of inconvenience to warrant upsetting a plaintiff's choice of forum, in certain circumstances that choice is afforded less weight. *Flores v. Zale Delaware, Inc.*, 2007 WL 4462992, at *2 (N.D.Cal. Dec. 17, 2007).  For example, a plaintiff's choice is given less weight in a class action, or when a plaintiff is not resident in the chosen forum. *Lou*, 834 F.2d at 739. "Furthermore, a plaintiff's choice of forum will be accorded little deference if there are indications of forum shopping." *Flores*, 2007 WL 4462992, at * 2 (citation and internal quotation marks omitted).

Plaintiff's choice of the Northern District is entitled to less deference here because he

5

United States District Court
Northern District of California

1   chose to file this case as a class action. *See Lou*, 834 F.2d at 739.  Additionally, the named

2   Plaintiff is not a resident of this district.  Given that Plaintiff purports to represent a statewide

3   class, his choice of forum is entitled to little weight. *See Johns v. Panera Bread Co.*, 2008 WL

4   2811827, at *2 (N.D. Cal. July 21, 2008) (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*,

5   330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs, all equally entitled

6   voluntarily to invest themselves with the corporation's cause of action and all of whom could with

7   equal show of right go into their many home courts, the claim of any one plaintiff that a forum is

8   appropriate merely because it is his home forum is considerably weakened.")).

9        Weighing in Plaintiff's favor is the fact that Defendant Thomson Reuters America

10  Corporation had business operations in San Francisco, California. (Compl. ¶ 11.)  Furthermore,

11  there is no indication that Plaintiff is forum shopping.

12       Under the circumstances of this case, the Court finds that Plaintiff's choice of venue

13  should be accorded some deference.  Accordingly, the Court finds this factor to be neutral.

14              b.   Parties' Contacts with the Forum

15       The Court also considers the contacts the parties have with both forums. Defendants have

16  two news bureaus in California. (Decl. of Kevin Regan, "Regan Decl.," Dkt. No. 13-1 ¶ 4.)  The

17  Los Angeles Bureau provides television and video news services through Reuters Video News, as

18  well as text journalism services. (Regan Decl. ¶ 5.)  The San Francisco Bureau primarily employs

19  text journalists who focus on the Silicon Valley technology industry. *Id.*  The San Francisco

20  Bureau recently began a television operation, and employs two employees to work on the Reuters

21  TV application. *Id.*  The bureaus operate independently of each other. (Regan Decl. ¶ 4.)

22  Additionally, the West Coast Bureau is located in San Francisco, California.  At the hearing,

23  Defendants informed the Court that most operations were located in Los Angeles, but did not

24  provide specific facts in support of this assertion.

25       At the heart of Plaintiff's complaint is whether Defendants misclassified California

26  employees as independent contractors. (Compl. ¶¶ 14-23.)  Plaintiff alleges that Defendant

27  Thomson Reuters America Corporation ("TRAC")'s day-to-day business operations are run out of

28  San Francisco, California. (Compl. ¶ 12.)  In other words, the conduct of which Plaintiff

1    complains—the decision to classify journalists as independent contractors—may have originated

2    in the Northern District.  Defendants contend, however, that TRAC is a holding company that has

3    not had a presence in San Francisco since the lease expired in 2012. (Defs.' Reply at 1; Decl. of

4    Sean Cannizzaro, "Cannizzaro Decl.," Dkt. No. 21-2 ¶¶ 3, 8.)

5        Defendants argue that since Plaintiff worked out of the Los Angeles Bureau, the parties

6    have stronger contacts with the Central District. (Defs.' Mot. at 7.)  While perhaps true, the class

7    action is not limited to those who worked with Reuters Video News, and includes all journalists

8    who were classified as independent contractors in California. (Compl. ¶ 25.)  Indeed, in their

9    reply, Defendants provide that, of the 114 putative class members, 26 are located in the Northern

10   District, and 79 are located in the Central District. (Defs.' Reply at 3; Decl. of Maureen Lyons-

11   Bacon, "Lyons-Bacon Decl.," Dkt. No. 21-3 ¶ 4.)

12       Plaintiff resides in the Central District, and was employed by the Los Angeles Bureau.

13   Thus, Plaintiff appears to have stronger contacts with the Central District.  This, however, is a

14   putative California class action, in which Plaintiff seeks to represent journalists from all over the

15   state, including the Northern District, and he chose to file the class action in the Northern District.

16       Nevertheless, the Court lacks sufficient information to determine the extent of Defendants'

17   contacts with the Northern District, which weighs against transfer at this time.

18                    c.  <u>Conveniences of Witnesses and Parties</u>

19       When considering this factor, the Court should look at who the witnesses are likely to be,

20   the nature of their testimony, and "why such testimony is relevant or necessary." *Johns*, 2008 WL

21   2811827, at *3 (citation and internal quotation marks omitted).

22       Defendants have identified several individual potential witnesses. (Regan Decl. ¶ 10.) In

23   sum, with the exception of one witness who resides in the Northern District, every witness

24   Defendants identify resides in the Central District.  Transfer to the Central District would be

25   indisputably more convenient for those witnesses Defendants have already identified.  These

26   identified witnesses, however, appear to be limited to current and former employees and

27   contractors who worked for the Los Angeles Bureau. *See id.*  Defendants do not identify potential

28   witnesses to testify regarding the employment practices in the San Francisco Bureau, nor

                                          7

companywide practices and policies regarding the classification of journalists.

In opposition, Plaintiff provides that the depositions of those witnesses would most likely occur in the Los Angeles area, and whose appearances at trial would not necessarily require them to be absent on the same day. (Pl.'s Opp'n at 10.)

Plaintiff resides in the Central District, such that transfer would be more convenient. Once again, however, this is a statewide putative class action, which, if certified, would include class members in the Northern District.

Under these circumstances, the Central District is only convenient for those identified witnesses who may be called to testify pertaining to the named plaintiff's prior engagement. In the context of a class action lawsuit, testimony from that many witnesses is unlikely to be required. Accordingly, the Court finds this factor to be neutral.

### d.  Familiarity of Forum with Applicable Law

Neither party contends that there is a difference between the Central District and the Northern District in terms of their familiarity with the governing law. The Court finds that this factor is neutral.

### e.  Ease of Access to Evidence

"Documents pertaining to defendants' business practices are most likely to be found at their principal place of business." *Italian Colors Rest. v. Am. Express Co.*, 2003 WL 22682482, at * 5 (N.D. Cal. Nov. 10, 2003). Plaintiff argues that, given that discovery will likely be electronic, there would be little or no burden on Defendants to produce the necessary records, even if this case remains in the Northern District. (Pl.'s Opp'n at 11.) At the hearing, Defendants asserted that they agreed that access to documents would not be impacted by litigating the case in the Northern District.

Thus, the Court agrees that ease of access to evidence will not be greatly impacted by either venue.

### f.  Relative Costs of Litigation

"Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions." *Italian Colors Rest.*, 2003 WL 22682482, at *5. The

Court concluded above that most of the identified witnesses are physically located within the Central District.  Additionally, while permitting this case to remain in the Northern District might not impact the ease of access to evidence, it might impact the costs of litigation if counsel for the parties are required to travel to the Northern District for hearings and trial,[1] and the identified witnesses are ultimately required to testify at trial in the Northern District.  Corporate witnesses located out of state, however, would not incur an appreciable additional cost by having the case remain in the Northern District.  The Court finds that the cost of litigation is likely to be lower if venue is transferred.

Accordingly, the Court finds that this factor weighs in favor of transfer.

g.  Local Interest in the Controversy

Both the Northern District and the Central District have an interest in this controversy. The Northern District's interest stems from the fact that Defendant Thomson Reuters America Corporation maintained its primary offices and conducted business operations in San Francisco, California. (Compl. ¶ 11.)  The Central District's interest stems from the fact that Plaintiff was employed by the Los Angeles Bureau.  As stated above, the Court lacks sufficient information to determine the extent of Reuters's contacts with the Northern District, which could result in the Northern District having a great interest in adjudicating this case.

///

///

///

///

///

///

///

///

---

[1] The Court permits parties to appear telephonically using CourtCall, a private service, if good cause exists and "personal attendance is not needed in order to have an effective hearing or conference." (*See* Judge Westmore's Procedures for Telephonic Appearances §§ I & II.)

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## IV.    CONCLUSION

In light of the foregoing, the Court finds that a more developed record regarding the nature of Reuters's contacts with the Northern District would help reveal whether transfer is appropriate. Accordingly, Defendants' motion to transfer venue to the U.S. District Court for the Central District of California is DENIED WITHOUT PREJUDICE. Plaintiff's request to conduct limited discovery regarding Reuters's corporate structure and business operations in the Northern District of California is GRANTED. Discovery shall be completed on or before April 18, 2016.

Additionally, the March 22, 2016 Case Management Conference is continued to May 17, 2016 at 1:30 p.m.

IT IS SO ORDERED.

Dated: February 8, 2016

KANDIS A. WESTMORE
United States Magistrate Judge